**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| MOHAMMED HISBULLAH RIZU,<br><br>    Petitioner,<br>  v.<br><br>FERETI SEMAIA, et al.,<br><br>    Respondents. | No. 5:26-cv-03524-AYP<br><br>**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS** |

## I.    SUMMARY

Petitioner Mohammed Hisbullah Rizu ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). Petitioner is currently detained by Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California. In this habeas action, Petitioner challenges the legality of his re-detention and continued civil confinement, asserting that Respondents violated the Due Process Clause of the Fifth Amendment by revoking his liberty without notice, without a hearing, and without any individualized determination that detention was warranted.

Having reviewed the record, and consistent with several recent decisions in this District, the Court concludes that Petitioner's re-detention on June 11, 2026—without notice, justification, or evidence of changed circumstances

warranting his sudden detention—violates due process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring Petitioner's immediate release and prohibiting future re-detention absent adequate pre-deprivation notice and an individualized hearing at which the Government must justify the need to detain him.

## II.   FACTS AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Bangladesh. (Dkt. No. 1-1 at 6.) Petitioner asserts that he entered the United States without inspection on April 7, 2018, when he was seventeen (17) years old. (Dkt. No. 1 ¶22.) Petitioner contends that he was immediately apprehended by immigration authorities upon entry. *Id.* Petitioner represents that following his initial detention, he was transferred to the custody of the Office of Refugee Resettlement ("ORR"), where he was held for approximately twenty-nine (29) days, before he was released. (Dkt. No. 1 ¶23.)

Petitioner contends that DHS served him with a Notice to Appear ("NTA"), charging him as removable under INA Section 212(a)(6)(A)(i) as a noncitizen present without admission or parole, on May 29, 2018. (Dkt. No. 1 ¶24.) Petitioner represents that he subsequently filed an I-589 Application for Asylum and Withholding of Removal and actively pursued his asylum claim before the immigration court. (Dkt. No. 1 ¶25.) Petitioner asserts that his removal proceedings were terminated on April 11, 2023, when an Immigration Judge ("IJ") granted the Department of Homeland Security's ("DHS") voluntary motion to dismiss without prejudice under 8 C.F.R. Section 1239.2(c). (Dkt. No. 1 ¶26.) Petitioner represents that he has no criminal history, no arrests, no charges, and no criminal convictions. (Dkt. No. 1 ¶31.)

Petitioner contends that following DHS' April 11, 2023, dismissal of his removal proceedings, he proceeded to pursue his affirmative asylum claim. (Dkt.

2

No. 1 ¶27.) Petitioner asserts that U.S. Citizenship and Immigration Services ("USCIS") scheduled an asylum interview for June 11, 2026. (Dkt. No. 1 ¶28.) Petitioner represents that he was arrested and taken into ICE custody when he appeared for his asylum interview on June 11, 2026. (Dkt. No. 1 ¶29.)

Following his detention, counsel for Petitioner sent an inquiry to the ADE Duty Attorney requesting confirmation as to the basis for Petitioner's detention and asking whether Petitioner is eligible for a bond hearing. (Dkt. No. 1-1 at 63.) In response, counsel for ICE's Office of the Principal Legal Advisor reported that the basis for Petitioner's detention is that "he was apprehended for entering the United States without inspection…" and "The current case law is that the immigration judges here do not have authority to issue a bond under 235 and 236 pursuant to the decision in the Yajare-Hurtado case when the Respondent is in the United States as an illegal immigrant, which is the category in which your client is charged." (Dkt. No. 1-1 at 61.) Petitioner remains at the ICE Adelanto Processing Center as of the filing of the instant Petition. (Dkt. No. 1 at 4-5.)

Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2241 on June 25, 2026. (Dkt. No. 1.) Respondents filed their Response (the "Response") on July 1, 2026. (Dkt. No. 7.) Both parties have consented to proceed before the Magistrate Judge. The matter is now fully briefed and submitted for decision.

## III.   DISCUSSION

Petitioner argues that his re-detention and continued civil confinement violate the Fifth Amendment's guarantee of due process because Respondents revoked his liberty without providing notice, without a pre-deprivation hearing, and without any opportunity to contest whether he posed a flight risk or a danger to the community. Petitioner therefore seeks immediate release, arguing

3

that Respondents' actions contravened the procedural protections the Constitution requires before depriving an individual of liberty.

Respondents do not address Petitioner's claims. Respondents, in their Answer, state that they "are not presenting an opposition argument at this time." (Dkt. No. 7.) Consistent with precedent, courts in this Circuit have regarded such silence as a concession. *See e.g.*, *Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession). The Court notes this position and independently evaluates Petitioner's claims on the merits.

**A. The Court Has Subject Matter Jurisdiction**

This Court has subject matter jurisdiction. 28 U.S.C. § 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing INS v. St. Cyr, 533 U.S. 289, 301–03 (2001)). Accordingly, 8 U.S.C. § 1252(g) does not bar review here. The Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 remains an available forum for statutory and constitutional challenges to detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Having established jurisdiction, the Court turns to the merits of

4

Petitioner's due process claim.

**B. Petitioner's Detention Violates Due Process.**

The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due process of law. Freedom from physical restraint lies at the core of this protection. *See Zadvydas*, 533 U.S. at 690–91. Respondents were initially made aware of Petitioner's presence in the United States in April 2018, when Petitioner entered the United States as a minor, and the ORR held and released him after (29) twenty-nine days.  (Dkt. No. 1 at 7.) When DHS voluntarily dismissed Petitioner's removal proceedings, after the ORR held him in custody for (29) twenty-nine days and Petitioner had actively pursued his asylum claim (Dkt. No. 1 at 7-8), it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017).

The Court analyzes Petitioner's due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976). Applying these considerations here, each factor weighs strongly in Petitioner's favor.

**1. Private Interest**

Petitioner argues that his sudden re-detention without notice or a pre-deprivation hearing directly infringed upon the core liberty interest protected by the Fifth Amendment. Petitioner contends that Respondents

deprived him of the ability to contest whether he posed a danger or flight risk before revoking his conditional liberty.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall ... be deprived of ... liberty ... without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d 1025, 1032–33 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after

that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that due process principles prohibit Respondents from revoking his release and re-detaining him absent adequate pre-deprivation process.

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in remaining free from custody. Petitioner asserts he lived free from physical restraint for over (7) seven years, actively pursued his asylum claim, has no criminal history, and has strictly adhered to the law since the time of his entry in the United States as a minor. (Dkt. No. 1 at 7-8 and 1 ¶31.) While Petitioner remained subject to the immigration laws and regulations during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

In consideration of the guiding principles and relevant authority, and the undisputed record of Petitioner's compliant period of release, the Court finds that Petitioner's interest in remaining at liberty is both substantial and well-established. Accordingly, the Court concludes that the Due Process Clause protects Petitioner's substantial interest in maintaining his freedom from confinement. *See Cruz*, 2025 WL 4051129 at 2–6; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding

a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole*). See also Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

### 2. Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that Respondents' failure to provide Petitioner with adequate pre-deprivation process creates a significant risk of erroneous deprivation. Respondents provided no notice, no pre-deprivation hearing, and no opportunity to contest whether he posed a flight risk or a danger to the community. (Dkt. No. 1 ¶28-29 and Dkt. No. 1-1 at 61.) Additionally, DHS identified no change in circumstances between the ORR's initial release in 2018, DHS' voluntary dismissal of Petitioner's removal proceedings in 2023, and his sudden re-detention on June 11, 2026. Both *Matter of Sugay* and *Saravia* require materially changed circumstances before DHS may revoke a prior release determination. *Sugay*, 17 I. & N. Dec. at 640; Saravia, 280 F. Supp. 3d at 1194–97. Civil immigration detention is constitutionally permissible only to prevent flight or protect the community from danger. *Zadvydas*, 533 U.S. at 690–91. Yet nothing in the record suggests that Petitioner's continued release threatened either interest at the time of his re-detention on June 11, 2026.

First, Respondents identify no material change in circumstances arising between the time of Petitioner's release in 2018 and his re-detention on June 11, 2026.  There are no allegations of criminal conduct and no new facts in the record that would lead a reasonable officer to conclude that Petitioner suddenly became a danger or flight risk at the time of his re-detention on June 11, 2026. As both *Matter of Sugay* and *Saravia* make clear, DHS may not revoke a prior

release determination absent such materially changed circumstances. *Matter of Sugay* 17 I. & N. Dec. 637, 640 (B.I.A 1981); *Saravia,* 280 F. Supp. 3d at 1196–97.

Second, the procedure employed here creates a substantial risk of error. Petitioner alleges that he was suddenly arrested when he appeared for his Asylum interview. (Dkt. No. 1 ¶29.)  As *Saravia* explained, due process in this context requires a prompt, pre-deprivation hearing before a neutral decisionmaker at the time of rearrest, not some time long after the liberty loss has already occurred. *Saravia,* 280 F. Supp. 3d at 1194–97. The court in *Cruz v. Lyons*, considering a re-detention at a routine appointment without prior notice, likewise concluded that such procedures pose a constitutionally unacceptable risk of erroneous deprivation. *See Cruz*, 2025 WL 4051129 at 4.

The record indicates that the ORR released Petitioner, after he was held for approximately twenty-nine (29) days, following his entry to the United States in 2018. (Dkt. No. 1 ¶23.) Additionally, despite Petitioner's active pursuit of his asylum claim, DHS made the decision to voluntarily dismiss Petitioner's removal proceedings in 2023. (Dkt. No. 1 ¶25-26.) Following his entry to the United States in April 2018 Petitioner continuously kept DHS informed of his presence in the country in full compliance with the immigration laws and regulations. (Dkt. No. 1 at 7-8.) The record before the Court demonstrates that Respondents repeatedly determined that Petitioner could remain safely in the community since his entry in 2018. (Dkt. No. 1 ¶23-26.) During this period of release, Petitioner asserts that he actively pursued his asylum claim and has strictly adhered to the law. (Dkt. No. 1 ¶25 and ¶31.) Yet despite Petitioner's unbroken record of compliance, Respondents provided no advance process to assess whether revoking his release would further the permissible purposes of immigration detention. Post-deprivation custody hearings do not remedy the

9

lack of constitutionally required pre-deprivation process. On this record, the Court concludes that the risk of erroneous deprivation is unacceptably high.

The Court further finds that Respondents' refusal to provide Petitioner with a bond hearing on the basis that he entered the United States without inspection is in violation of the Bond Eligible Class certified in *Maldonado Bautista*. In responding to counsel for Petitioner's query as to whether he is eligible for a bond hearing, Respondents stated that "The current case law is that the immigration judges here do not have authority to issue a bond under 235 and 236 pursuant to the decision in the Yajare-Hurtado case when the Respondent is in the United States as an illegal immigrant, which is the category in which [Petitioner] is charged." (Dkt. No. 1-1 at 61.) In the Central District, the court addressing this issue and certifying the bond eligible class in *Maldonado Bautista* concluded that the denial of bond hearings to noncitizens charged with entering the United States without inspection is in violation of the Immigration and Nationality Act ("INA"). *See Maldonado Bautista v. Santacruz*, No. 5:25-CV01873-SSS-BFM, 2025 WL 3713987, at *8-*22 (C.D. Cal. Dec. 18, 2025). Accordingly, the Court finds that Petitioner is entitled to a bond hearing based on the reasoning in *Maldonado Bautista*. *See Maldonado Bautista*, 2025 WL 3713987, at *8-*22. The Court notes that Petitioner's right to a bond hearing pursuant to the Bond Eligible Class certified in *Maldonado Bautista* holds true, notwithstanding, and in addition to, Petitioner's strong, independent liberty interest, which arose from Respondents' repeated determination that Petitioner could reside freely in the community for over (7) seven consecutive years.

**3. Government Interest**

As to the third *Mathews* factor, the Government's interests, as reflected in the record before the Court, are insufficient to justify the deprivation of liberty here. Although the Government has a legitimate interest in enforcing

10

the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who has been safely residing in the community.

Courts considering similar re-detentions have consistently concluded that the Respondents' interest in bypassing pre-deprivation procedures is low. *Cruz v. Lyons* held that, where a noncitizen has long been released and compliant, the Respondents have no meaningful countervailing interest in effecting a sudden re-detention without a hearing, particularly because ICE routinely conducts custody hearings and the administrative burden of providing one is minimal. *See* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). Likewise, in *López*, the court emphasized that immigration custody hearings are "routine and impose a minimal cost," and that the government's interest in re-arresting a compliant supervisee without a hearing is "low." 2025 WL 2959319, at *6 (cleaned up). *Garro Pinchi* similarly held that due process requires the Government to identify an interest "beyond its own administrative practices" to justify depriving an individual of liberty without pre-deprivation protections, and that detention "for its own sake" or due to the absence of established procedures is not a legitimate governmental interest. 792 F. Supp. 3d at 1035–36. Additionally, *Rodriguez Diaz* reiterated that where a noncitizen has long complied with reporting requirements, the Government's interest in re-detaining that individual without a hearing prior to detention is especially weak. 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

These decisions align with broader Ninth Circuit authority recognizing that the Government has no legitimate interest in detaining individuals who can be safely supervised through less restrictive means. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). They also reflect *Saravia*'s conclusion that the administrative burden of providing a brief, neutral hearing to assess any material change in circumstances is minimal, particularly where

DHS already conducts such hearings in other detention contexts. 280 F. Supp. 3d at 1199–1200.

Here, Respondents do not identify any administrative or public-safety reason they could not have provided Petitioner with notice and an opportunity to be heard prior to re-detention. Nor do Respondents identify any individualized risk posed by Petitioner at the time of his re-arrest. Under *Mathews*, the Government's interest in bypassing pre-deprivation process in these circumstances is minimal.

Accordingly, the third *Mathews* factor weighs decisively in Petitioner's favor.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Respondents' lack of constitutionally adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Respondents' re-detention of Petitioner on June 11, 2026, without adequate pre-deprivation process, violated due process and that he should be released forthwith.

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Mohammed Hisbullah Rizu's (A#215665856) immediate release and restoration of liberty to the conditions existing at the time of his detention on June 11, 2026, along with his personal belongings, including his identification, passport, work permits, and other documentation, and preventing his re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to confine him prior to his re-detention; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released

from Respondents' custody. Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.


DATED:   July 8, 2026


_____
ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

13